IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| AQUA LOG, INC., | : | |
| | : | |
|     Plaintiff/Salvor, | : | |
| | : | |
| v. | : | |
| | : | |
| LOST AND ABANDONED | : | |
| PRE-CUT LOGS AND RAFTS | : | |
| OF LOGS, lying on the bottom of | : | CASE NO.: 1:07-CV-160 (WLS) |
| a navigable river within one (1) river | : | |
| mile of a point located at 30 degrees | : | |
| 58.536' North Latitude and 84 degrees | : | |
| 44.725' West Longitude, | : | |
| | : | |
|     *In rem* Defendant, | : | |
| | : | |
| STATE OF GEORGIA, | : | |
| | : | |
|     Claimant. | : | |
| | : | |

## ORDER

This Court is once again poised to dive back into this case and submerge itself in admiralty law. This matter has returned to this Court on remand from the United States Court of Appeals for the Eleventh Circuit. That Court reversed this Court's order granting summary judgment in the Claimant's favor on the basis of an absence of admiralty jurisdiction. With guidance from the Eleventh Circuit, the Court now turns to the merits of the pending cross-motions for summary judgment. For the reasons that follow, Claimant State of Georgia's Motion for Summary Judgment (Doc. 41) is **DENIED** and Plaintiff/Salvor Aqua Log's Motion for Summary Judgment (Doc. 43) is **GRANTED.**

## PROCEDURAL HISTORY

On August 23, 2007, Plaintiff/Salvor Aqua Log, Inc. ("Aqua Log") filed verified complaints in the above-captioned case and two companion cases, Case Nos. 1:07-CV-159 (WLS) and 1:07-CV-208 (WLS), against the *In Rem* Defendant Lost and Abandoned Pre-Cut

1

Logs and Rafts of Logs ("the Logs") under the Salvage Act, 46 U.S.C. § 80101, *et. seq.* and the Law of Finds. (*See* Doc. 1.) The Logs in this case are located within one river mile of a point located at 30° 52.536' N. Lat. and 84° 44.725' W. Long., which is a point on Spring Creek in Decatur County, Georgia. (*Id.* at ¶ 3.) Aqua Log seeks to recover the individual logs and attempt to determine the identity of the owner. (*Id.* at ¶ 6.) If Aqua Log could identify the owner of the individual log, it would seek a "full and liberal salvage award." (*Id.* at ¶ 9.) If the owner of the individual log could not be identified or the log was abandoned, Aqua Log would seek title in the log under the American Law of Finds. (*Id.*)

On August 23, 2007, United States Magistrate Judge Richard L. Hodge issued an Order Directing the Issuance of the Warrant of Arrest and/or Summons at the direction of the United States Marshals Service ("USMS"). (Doc. 4.) Aqua Log's President, Jon Ryan Lee, was appointed as substitute custodian to "provide stabilization and preservation together with security, storage and routine services for the safekeeping of the individual logs" at a lower cost than the USMS. (Docs. 6-9, 11-13.) On September 6, 2007, Aqua Log removed "[o]ne submerged log less than 25 feet in length located in Spring Creek" located within the description of the *In Rem* Defendant; specifically, at 30° 58.536' N. Lat., 84° 44.725' W. Long. (Docs. 14, 15, 18 & 19.)

On September 7, 2007, the State of Georgia ("the State") filed a Verified Statement of Right or Interest claiming that it owned all logs, embedded or not, and did not wish for the *In Rem* Defendant to be salvaged. (Docs. 17 & 20.) In a companion case, Case No. 1:07-CV-208 (WLS), the Court denied the State's Motion to Dismiss on the ground that it was not entitled to Eleventh Amendment immunity because it did not have actual possession of the *res*. This case was stayed during the appeal of that ruling. (Doc. 32.) On January 28, 2010, the Eleventh Circuit affirmed. *Aqua Log, Inc. v. Georgia*, 594 F.3d 1330 (11th Cir. 2010).

On September 30, 2011, the Court granted the State's Motion for Summary Judgment based on the Court's determination that it lacked subject matter jurisdiction because the portion of Spring Creek at issue in this case does not constitute "navigable waters" as that term is used to invoke admiralty jurisdiction. (Doc. 71.) The Court reached the same conclusion in the two companion cases. The Eleventh Circuit reversed the Court's finding that the waterways subject to this action are not navigable. *See Aqua Log, Inc. v. Lost &*

2

*Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055 (11th Cir. 2013). After they were given the opportunity to amend their Motions for Summary Judgment, Aqua Log indicated that it wished to stand on its briefs and the State filed an amended memorandum in support of its motion for summary judgment. (Docs. 80-84.) Accordingly, the Court finds that this matter is ripe for review.

## **FACTUAL HISTORY**

### I.  Introduction

The following facts are derived from the Verified Complaint (Doc. 1), the State's Answer (Doc. 20), the State's Statements of Material Facts (Docs. 41-2 & 46-1),[1] Aqua Log's Statements of Facts (Doc. 43-1 & 60-1), and the Parties' Stipulations (Doc. 41-11), all of which were submitted in compliance with M.D. Ga. L.R. 56, and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). For reasons that follow, the Court finds that this case does not contain a genuine dispute of material fact.

### II.  Relevant Facts

The pre-cut submerged logs subject of this action were placed in Spring Creek as part of logging operations during the 1800s and early 1900s for transport to lumber mills. (Docs. 41-2 at ¶ 3; 41-11 at 1.) The Logs sank, presumably remained on the river bottom since that time, and were abandoned by their original owners. (Docs. 41-2 at ¶ 4; 41-11 at 2; 43-1 at ¶¶ 1 & 2.) As owner of the waterbottoms of Spring Creek where the Logs can be found, the State owns abandoned, embedded logs. (Docs. 1 at ¶ 6; 41-2 at ¶ 7; 41-11 at 2.) Aqua Log only seeks to salvage or obtain title in non-embedded logs. (*See id.*)

Sunken logs do not permanently remain in one place but are instead moved by the current and flow of the river.[2] (Doc. 41-2 at ¶ 8.) Although no one is certain of the number

---

[1] In Aqua Log's Statement of Facts (Doc. 60-1), which addresses the State's Statement of Material Facts (Doc. 41-2), Aqua Log states that it "does not contest any of the Statements of Material Fact set forth by the State, with the exception of Statement of Fact No. 25." (Doc. 60-1 at 1). The Court has set forth the facts in light of Aqua Log's statement and M.D. Ga. L.R. 56.

[2] The Court finds incongruous the State's assertions (1) that the Logs do not permanently remain in one place and (2) that the Logs are "embedded in the river bed to some degree." (*Compare* Doc. 41-2 at ¶ 8 *with* Doc. 41-2 at ¶ 25.)

3

of logs comprising the *In Rem* Defendant, Aqua Log estimates the number to be more than 500.  (*Id.*)  Despite its ability to do so, Aqua Log has not taken photographs of the Logs, other than of the representative log retrieved by Aqua Log on September 7, 2007, and has not recorded precise GPS coordinates.[3]  (Docs. 18, 19 & 41-2 at ¶¶ 9-11.)

The State has been aware of the presence of submerged logs in its waterways since at least 1958.  (*See* Doc. 41-3.)  In 1981, the State enacted the Submerged Cultural Resources Act, Ga. Code Ann. § 12-3-80 *et seq.* ("SCRA").  (Doc. 41-2 at ¶ 15.)  The SCRA defines "submerged cultural resources" as follow:

> [A]ll prehistoric and historic sites, ruins, artifacts, treasure, treasure-trove, and shipwrecks or vessels and their cargo or tackle which have remained on the bottom for more than 50 years, and similar sites and objects found in the Atlantic Ocean within the three-mile territorial limit of the state or within its navigable waters.

*See* Ga. Code Ann. § 12-3-80.  The SCRA gives "[t]itle to, and the exclusive right to regulate the investigating, surveying, and recovery of, all such submerged cultural resources," the State, and names the Georgia Department of Natural Resources ("DNR") the custodian of all such submerged cultural resources.  *See* Ga. Code Ann. §§ 12-3-80 & 12-3-81(a).  That Act also establishes a permitting scheme for exploring, surveying, or recovering "submerged cultural resources," and makes removal of such without a permit a misdemeanor offense.  *See* Ga. Code Ann. § 12-3-83.  Notwithstanding the State's asserted ability to bring a criminal charge for the referenced crime under the SCRA, persons caught removing submerged logs from Georgia waterways were charged under Georgia's theft-by-taking statute; such persons were not charged for removing submerged cultural resources. [4]  (*See* Doc. 41-5.)

In 1998, DNR appointed the Submerged Timber Task Force ("the Task Force") to study and make recommendations regarding recovery of deadhead logs.[5]  (Doc. 41-2 at ¶ 17.)  In 1998, 1999, and 2001, DNR issued administrative orders that prohibited the removal of logs for commercial purposes until the Task Force could complete its study.  (*Id.*)  In

---

[3] The State does not explain how Aqua Log could provide GPS coordinates of logs that, according to the State and facts as established on summary judgment, are continuously moving.  (*See* Doc. 41-2 at ¶ 8.)
[4] There is no indication that Georgia obtained convictions for any of these charges.  (*See* Doc. 41-5.)
[5] The Parties are in agreement that deadhead logs are "logs that were commercially harvested from forests in this state during the nineteenth and twentieth century and that sank or were sunken in a river either while in the process of being floated to mill or market or intentionally for storage." (*See* Doc. 41-2 at 7 n.2.)  For the purposes of this stage of this case, the Court will refer to the *In Rem* Defendant as deadhead logs.

April 2003, after using side-scanning sonar to take a representative survey of twenty-two miles of the Altamaha River and oxbow lakes, the Task Force issued a report stating that removal of deadhead logs could impact water quality, navigability of waterways, and the ecosystem.  (*Id.*)

Following the Task Force's recommendation, Georgia enacted § 12-3-82.1, Permits for investigation, survey, or recovery of deadhead logs, in 2005 which directed DNR to "establish a program whereby persons interested in investigating, surveying or recovering [deadhead] logs would be required to first apply for and receive a permit from DNR before commencing such activities."  (*Id.* at ¶ 19; *see also* Doc. 41-6.)  To implement the deadhead log permitting program, the State Board of Natural Resources passed rules that set out the amount of compensation to be paid to the State for the recovery of deadhead logs, and provided for the revocation of permits for violations of laws, rules, or policies related to deadhead logs.  (Doc. 41-2 at ¶ 20.)  In 2006 through 2008, DNR conducted studies to identify areas of waterways where removal of deadhead logs would not negatively impact the environment or recreational use of those waterways.  (*Id.* at ¶¶ 21-24.)  Section 12-3-82.1 expired by its own terms on January 1, 2008.  (*Id.*)  To date, no statute or regulation has been enacted to specifically address the removal of deadhead logs.  (*See generally* Doc. 41-2.)

## ANALYSIS

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Tipton v. Bergrohr GMBH-Siegen*, 965

F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

### I. Federal Admiralty Jurisdiction

Article III, Section 2, of the United States Constitution and Title 28, United States Code, Section 1333(1) give federal district courts original jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction." Some courts addressing admiralty jurisdiction in salvage and law of finds cases find navigability of the subject waterway to be "the critical question"

6

as to whether the district court has admiralty jurisdiction. *See Smith v. The Abandoned Vessel*, 610 F. Supp. 2d 739, 748-49 (S.D. Tex. 2009). The Court notes, however, that "[federal] courts have preferred to read congressional grants of admiralty jurisdiction restrictively" to preserve states' rights. *See Harville v. Jones-Manville Prods. Corp.*, 731 F.2d 775, 780 (11th Cir. 1984). That consideration must be balanced with the purpose of admiralty jurisdiction, which is to "protect commercial activity by ensuring that uniform rules of conduct are in place." *Aqua Log*, 709 F.3d at 1061 (citing *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 269-70 (1972)). For that reason, the Court finds that the test articulated in *Richardson v. Foremost Ins. Co.*, 641 F.2d 314 (5th Cir. 1981), is appropriate to determine whether the Court has admiralty jurisdiction in this matter. The *Richardson* test, which applies to admiralty jurisdiction in tort cases, requires that the subject of the lawsuit be located in a navigable waterway and have a relationship with "traditional maritime activity." *See id.* In other words, *Richardson* more strictly curtails federal admiralty jurisdiction than *Smith* by imposing an additional requirement.

Under *Richardson*, for admiralty jurisdiction to exist in a tort case, the wrong must bear a significant relationship to "traditional maritime activity" (the nexus requirement) and the tort must have occurred on navigable waters (the location requirement). *See Aqua Log*, 709 F.3d 1059; *see also Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982); *Exec. Jet*, 409 U.S. 249. The relevant activity, however, "is defined by the general type of conduct from which the incident arose, not by the specific facts of the case." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 246 (2d Cir. 2014) (citing *Sisson v. Ruby*, 497 U.S. 358, 364 (1990)). Traditional maritime activity includes navigation and commerce on navigable waters. *Exec. Jet*, 409 U.S. at 272.

Here, the *In Rem* Defendant sank during the course of a commercial logging operation on a navigable waterway. *Aqua Log*, 709 F.3d at 1062. But for the Logs' capacity to float down the river to a processing facility, a boat or ship would have been required for transport. Incidents involving commercial maritime vessels almost always invoke federal admiralty jurisdiction. *See Drachenberg v. Canal Barge Co., Inc.*, 571 F.2d 912, 915-16 (5th Cir. 1978). The type of logging operation that resulted in the Logs' presence in Georgia's waterways is just like all other traditional maritime activities; the current and flow of navigable waterways were used to transport goods for commercial sale. Therefore, the fact

that boats or ships were not used is of no import, and the Court finds that the Logs at issue in this matter bear a significant and substantial relationship to traditional maritime activity. As such, *Richardson*'s nexus requirement is satisfied.

Further, the Court notes that in this case the Eleventh Circuit has held that the waterways subject to this action are navigable for purposes of admiralty jurisdiction. *Aqua Log*, 709 F.3d at 1062. As such, *Richardson*'s location requirement is satisfied. Also, the Court notes that the Parties have not identified any other test that would more strictly construe the Court's admiralty jurisdiction and have not challenged the Court's admiralty jurisdiction beyond argument relating to whether the involved waterways were navigable for purposes of admiralty jurisdiction. As such, the Court finds that all factors necessary for admiralty jurisdiction under the test articulated in *Richardson v. Foremost Ins. Co.*, 641 F.2d 314 (5th Cir. 1981), are present in this case and, consequently, that the Court has admiralty jurisdiction over this matter.

## II.   Applicability of Salvage Law

As to the merits of this case, the Parties initially disagree as to whether salvage law applies. The State maintains that salvage law has no application because the Parties have stipulated that the Logs are abandoned and have rested on Georgia waterbottoms for over one-hundred years. (Doc. 66 at 8-9.) Aqua Log asserts that salvage law applies because the presumption against abandonment has not been rebutted. (Doc. 60 at 5.) For the reasons that follow, the Court concludes that salvage law is inapplicable to this case.

Salvage law is generally applied where the property at issue is a shipwreck or other vessel that is currently or has previously engaged in commercial or recreational maritime activity. None of the cases cited by the Parties or located by the Court involve the application of salvage to sunken logs. *See generally R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521 (4th Cir. 2006) (salvage of twentieth-century sunken passenger ship); *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 974 F.2d 450 (4th Cir. 1992) (salvage of nineteenth-century sunken passenger ship); *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560 (5th Cir. 1981) (salvage of seventeenth-century shipwreck); *Whitmire v. Cobb*, 88 F. 91 (5th Cir. 1898) (salvage case involving timber found drifting in harbor); *Hudson v. Whitmire*, 77 F. 846 (N.D. Fla. 1896) (same).

8

"The primary concern of salvage law is the preservation of property on oceans and waterways." *Columbus-Am. Discovery Grp.*, 974 F.2d at 460 (citing *Hener v. United States*, 525 F. Supp. 350, 357-58 (S.D.N.Y. 1981)). Indeed, salvage law is only appropriate where the property at issue is in marine peril. *See Klein v. Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F.2d 1511, 1514-15 (11th Cir. 1985). Aqua Log has not identified any case that found century-old sunken timber to be at marine peril. (*See* Doc. 43-2 at 3.) "Salvage Law assumes that the property being [salvaged] is owned by another" and therefore encourages a salvor to save the property for the benefit of the owner. *See Columbus-Am. Discovery Grp.*, 974 F.2d at 460 (citation omitted). The Logs in this case sank more than one-hundred years ago, and the true owners have evinced no intent to reclaim their property. The primary concern behind salvage law, which clearly applies where logs are found adrift, is absent from this case. Therefore, the Court finds that salvage law is inapplicable and will instead apply the law of finds.[6]

### III. Application of Law of Finds

Subject to two exceptions, "[t]he common law of finds . . . assigns ownership of the abandoned property without regard to where the property is found." *Klein*, 758 F.2d at 1514. Where "the abandoned property is embedded in the soil, it belongs to the owner of the soil." *Id.* "[W]hen the owner of the land where the property is found . . . has constructive possession of the property such that the property is not 'lost,' it belongs to the owner of the land." *Id.* (citations omitted).

#### A. Abandonment

First, the Court notes that the Parties stipulated for the purposes of summary judgment that the Logs are abandoned property. (*See* Docs. 41-2 at ¶ 4 & 60-1.) As such, the Court is generally constrained to accept that fact as true on summary judgment. *See* M.D. Ga. L.R. 56. Second, for the reasons that follow, the Court finds that the undisputed facts show that the Logs were abandoned by their original owners, even when considered independently of the above-referenced stipulation. While the general maritime rule is that "lapse of time and nonuse[ ] are not sufficient, in and of themselves, to constitute an abandon-

---

[6] The Court notes that the Parties stipulation that the Logs are abandoned also supports the Court's conclusion that salvage law does not apply.

9

ment" of property lost at sea, *Wiggins v. 1100 Tons, More or Less, of Italian Marble*, 186 F. Supp. 452, 456 (E.D. Va. 1960), "[u]nder the law of finds, the inference of abandonment may arise from lapse of time and nonuse of the property." *Chance v. Certain Artifacts Found & Salvaged from The Nashville*, 606 F. Supp. 801 (S.D. Ga. 1984). As noted above, salvage law presumes the property has an owner who has lost the property but wishes to retain title thereto. That presumption makes sense where the property is lost in or upon a vast body of water. Owners who lose property on a vast body of water, or whose property inadvertently floats away from them on a strong current, may diligently search for the lost property without finding it. Those owners, while engaging in a search for their property, conceivably have a small likelihood of successfully finding their property or encountering the salvors due to the vastness of the body of water and the resultant concealment of the property's location.

The situation in this case is distinct from the typical salvage situation. The Logs at issue in this case sank during the normal course of a logging operation, presumably on the Logs' normal route of travel on a waterway. For that reason, the presumption applicable in salvage cases makes less sense in the circumstance before the Court. The Parties stipulated that the Logs sank to the bottom of Georgia waterways during logging operations at least one-hundred years ago. (*See* Doc. 41-11 at 2.) There is no evidence in the record that the original owners have made any attempt or harbor any intent to return to retrieve the Logs. As such, the Court finds that salvage law's presumption against abandonment is inapplicable and that the undisputed facts demonstrate that the Logs were abandoned by their original owners.

### B. Embeddedness

The State argues that the Logs are embedded in the riverbottoms and therefore property of the State. The State's only evidence that the logs are embedded to any degree is an affidavit from Adam Kaeser, a Natural Resources Biologist at DNR. Therein, Kaeser states that "it is [his] experience that most logs found [in] Georgia rivers are embedded in the river bed to some degree." (Doc. 41-8 at 4.) The Court finds Kaeser's affidavit insufficient to establish undisputed embeddedness for two reasons. First, whether something is embedded is a factual question, to be established by evidence. *See Zych v. Unidentified, Wrecked & Abandoned Vessel, Believed to be the Seabird*, 941 F.2d 525, 530 n.7 (7th Cir. 1991) (citing *Chance*, 606

F. Supp. at 807 and *Klein v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 568 F. Supp. 1562, 1566 (S.D. Fla. 1983)). To determine the appropriateness of summary judgment, the Court must rely on facts. *See* Fed. R. Civ. P. 56. Kaeser's statement that the Logs are embedded is a legal conclusion, not a fact. *See Klein*, 568 F. Supp. at 1566. Second, Kaeser only states that "*most logs*" are embedded, not that the particular Logs comprising the *In Rem* Defendant are embedded. (Doc. 41-8 at 4 (emphasis supplied).) Because Kaeser's affidavit does not rely upon personal knowledge regarding the particular Logs described in this case, the Court concludes that Kaeser's general affidavit is not evidence of embeddedness and cannot be considered in any fashion or for any purpose at this stage in this matter. Specifically, due to its generality, the affidavit is insufficient to raise a genuine dispute of material fact upon the record before the Court.

The Court finds that the undisputed evidence in this case demonstrates that the subject Logs are not embedded. The Verified Complaint states that Aqua Log intends only to remove logs resting on the river bottom, not logs embedded in the river bottom. (Doc. 1.) Also, Aqua Log asserts that it will not use tools of excavation, but will use only a winch, cable, and crane. "Embedded," as defined by the Abandoned Shipwreck Act ("ASA"), "is to be 'consistent with the recognized exception from the law of finds for shipwrecks embedded in submerged lands of a state.'" *Zych*, 941 F.2d at 530 (citation omitted). Under the ASA, "embedded" is any item "firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof." 43 U.S.C. § 2102(a). This definition is in line with other cases that analyzed embeddedness under the law of finds. *See*, *e.g.*, *Chance*, 606 F. Supp. at 806 (shipwreck determined to be abandoned where it was "sealed . . . under tons of sand").

Aqua Log, with Lee's affidavit, presented the Court with the only relevant and competent evidence regarding embeddedness. (Doc. 58-1.) Lee stated that the representative logs he removed from Georgia waterways were "cut at both ends [and] had very little sand or sediment" on them, and were removed "by hand." (*Id.*) Lee also stated that Aqua Log intends to remove logs using only a winch and cable. (Doc. 58 at 2.) A winch, cable, and crane, when not used to move bottom sediments to gain access to the Logs, are not tools of

excavation.  *See* Abandoned Shipwreck Act Guidelines, 55 Fed. Reg. 50,116, 50,121 (Dec. 4, 1990).

Further, the Court is constrained by the facts as established for the purposes of summary judgment to find that the subject Logs are not embedded.  The State asserted and Aqua Log agreed that "[s]unken logs do not remain in one place due to the current and flow of the river and migrate along the river with the downstream flow."  (*See* Doc. 41-2 at ¶ 8.)  Clearly, the definition of embeddedness the State wishes the Court to adopt does not require the Logs to be embedded in the river bottom to any degree or by any reasonable definition.  Based on a review of the cases assessing embeddedness as referenced above, the Court disagrees with the State's suggested definition.

The State has characterized Aqua Log's request to remove the *In Rem* Defendant from Georgia waterways as a request for "an exclusive right to conduct the equivalent of a mining operation over a two nautical mile stretch of Spring Creek for whatever logs may be found there at the time."  (Doc. 46 at 10.)  The Court disagrees with that assessment.  Aqua Log's suggested method of removing Logs—identifying the Logs that can be removed with a winch and cable and removing such Logs—is the only reasonable way of removing deadhead logs suggested to the Court.  Although the State has criticized that method, it has not identified any alternative method.  Presumably, the State would have the Court require Aqua Log to photograph each individual log, or require the fact finder to don scuba gear and directly observe the Logs to make a log-by-log determination of embeddedness.  The State has not cited, and the Court has not located, any case with such requirements.  If Aqua Log were to remove Logs using tools of excavation when ordered to refrain from doing so, it would be contrary to the Court's finding and Aqua Log's own representations.  As such, the State is not without recourse, by way of the Court's contempt power, in the event that Aqua Log attempts to remove embedded logs.

Based on Aqua Log's representations that it only seeks to remove non-embedded logs, the State's failure to present evidence that the Logs are embedded, and Lee's affidavit regarding the conditions and characteristics of the representative Logs and the Logs Aqua Log intends to remove, the Court finds that the undisputed facts demonstrate that the Logs at issue in this suit are not embedded.

### C. Constructive Possession

Based on the findings above, the dispositive issue remaining before the Court is whether the State has constructive possession of the *In Rem* Defendant.[7] *See Klein*, 758 F.2d at 1514. The State has constructive possession of the Logs if it exercises "ownership, dominion, or control" over them, and has "the power and the intention to exercise dominion and control" over them. *See Aqua Log, Inc. v. Georgia*, 594 F.3d 1330, 1336-37 (11th Cir. 2010); *Klein*, 758 F.2d at 1517. In *Klein*, the Eleventh Circuit found that the United States had constructive possession over a shipwreck in a salvage and finds case. 758 F.2d at 1514. The *Klein* Court found that "the United States has had constructive possession of the wreck by virtue of a Preliminary Archeological Assessment . . . prepared for the Park Service." *Id.* The Court also found that the United States had the power to exercise dominion and control of the property under the Property Clause of the U.S. Constitution, as well as the intention to do so based on the "vast matrix of statutes and regulations [that] have been established toward [the] goal [of] conservation of historic objects for the enjoyment of future generations." *See id.* at n.5. In *Klein*, the shipwreck was subject to the National Park Act, Antiquities Act, National Park Service Act, and Archeological Resources Protection Act. *Id.*

The Court finds that the undisputed evidence establishes that the State lacks constructive possession of the Logs. First, the Logs are not subject to the same volume of constitutional provisions, statutes, and regulations as the property in *Klein*. The State asserts that the Logs are subject to SCRA. The Court disagrees. The SCRA defines "submerged cultural resources" as "all prehistoric and historic sites, ruins, artifacts, treasure, treasure-trove, and shipwrecks or vessels and their cargo or tackle." *See* Ga. Code Ann. § 12-3-80. Other than conclusory and presumptuous language, the State has provided no argument that the Logs fall under the SCRA's definition of submerged cultural resources.[8] Every item listed as a submerged cultural resource is manmade. The Logs, however, are naturally occurring. Although they were cut at both ends, the Logs do not appear to be included within the purview of the SCRA, which appears to have been intended to vest title of shipwrecks and their cargo in the State. Arguably, the State's best argument that the Logs fall under the SCRA—

---

[7] The States does not seriously contend that it has actual possession of the Logs. *See Aqua Log, Inc. v. Georgia*, 594 F.3d 1330, 1337 (11th Cir. 2010) ("Georgia's possession was, at most, mere constructive possession.").

[8] The Court has not located any case construing the definition of "submerged cultural resources."

13

although not asserted by the State in its briefs—is that the Logs are "historic . . . vessels." However, the Logs are not capable of having "cargo or tackle" as contemplated by § 12-3-80. As such, the Court finds that the Logs are not subject to the plain language of the SCRA, and the State must therefore rely on other facts to establish constructive possession.

The State argues that it has constructive possession due to the actions of DNR and several prosecutions the State has initiated against individuals who have removed deadhead logs. (*See* Doc. 42.) Beginning in 1998, DNR, through the Task Force, conducted several studies and issued several reports and administrative orders. These actions culminated in a 2003 Report that suggested Georgia prohibit the removal of submerged logs. In 2005, Georgia passed a statute, Ga. Code Ann. § 12-3-82.1, that required DNR to establish a scheme to regulate the removal of deadhead logs from Georgia waterways. That statute expired by its own terms in 2008. In 2007 and 2008, DNR conducted additional surveys of deadhead logs in certain portions of Georgia waterways. (*See* Doc. 41-9.) Also, the State initiated prosecutions against several individuals under Georgia's theft-by-taking statute, Ga. Code Ann. §§ 16-8-2 & 16-8-21, for removing deadhead logs from Georgia waterways. (*See* Doc. 41-5.)

The Court finds that, notwithstanding the above-referenced actions, the State does not have constructive possession of the *In Rem* Defendant. The actions taken and surveys conducted by DNR and the Task Force, and the initiation of criminal actions against individuals removing sunken logs from Georgia waterways, demonstrate only that the State had, at most, an *intention* to exercise dominion and control over the Logs. Those facts do not evidence the State's *power* to do so. After § 12-3-82.1 expired in 2008, the Georgia Legislature took no further action to renew that statute or implement a new statute governing submerged logs or deadhead logs notwithstanding the State's longstanding knowledge of them. Even as litigation in this case continued for nearly eight years, the Georgia Legislature has not enacted a statute to specifically address submerged logs or deadhead logs. Therefore, as of the time the cross-motions for summary judgment ripened, Georgia, unlike other states, had no statute vesting title to submerged logs in the State, or regulating or prohibiting public interaction with submerged logs. *See* Me. Rev. Stat. tit. 12, § 1867; Mich. Comp. Laws 324.32602; Wis. Stat. § 170.12; Minn. Stat. § 103G.651. Without evidence that the State obtained theft-by-taking convictions against persons who previously removed submerged logs,

14

and without any indication from the State as to how those prosecutions concluded, the Court presumes that the State was unable to do so because it did not have title to the Logs. If the State lacked title to the Logs, it could not be a victim of theft-by-taking of those Logs. In other words, the record currently before the Court indicates that the log removers were not violating the theft-by-taking statute because those logs did not belong to anyone. The mere initiation of a prosecution for theft is not proof of ownership in the property allegedly taken without a validating conviction.

Further, the Court notes that even if the SCRA governed the Logs, the State would not necessarily have constructive possession of them. The State's repeated assertions that it has an interest in preventing or regulating the removal of deadhead logs for ecological reasons are merely justifications for the State's potential promulgation of legislation or regulations pertaining to the Logs, and the State's failure to implement restrictions belies its claim. For ecological purposes, the State very well may have a legitimate interest in and reason for such legislation or regulation. However, the fact that the State has a legitimate interest to pass such laws or rules does not necessarily equate to ownership in the same way as a statute vesting title in the State. For instance, a state or local government can restrict a homeowner's use or enjoyment of his or her land. The ability to lawfully enact such restrictions does not place ownership of the property with the governmental entity. Something further is required. In *Klein*, the United States had ownership of the shipwreck upon federal land based on the Property Clause of the U.S. Constitution and at least three federal statutes. The State has not pointed to one constitutional provision, statute, or regulation currently in effect that pertains to the Logs, nor has it identified any law that vests title to the Logs in the State.

Based on the above, the Court currently has no evidence before it to support a finding that Georgia had the *power* to exercise dominion and control over the Logs or other non-embedded, abandoned logs submerged in Georgia waterways for the purposes of establishing constructive possession. For that reason, the Court finds that the evidence is undisputed that Georgia does not have constructive possession over the subject *In Rem* Defendant.

## CONCLUSION

For the reasons stated above, Claimant State of Georgia's Motion for Summary Judgment (Doc. 41) is **DENIED,** and Plaintiff Aqua Log, Inc.'s Motion for Summary

Judgment (Doc. 43) is **GRANTED.**  Judgment shall be entered in favor of Aqua Log.  Aqua Log may immediately begin removing the Logs comprising the *In Rem* Defendant from the places defined in the Verified Complaint (Doc. 1).  Subject to the Court's contempt power, Aqua Log may use only a winch, cable, and crane to remove the Logs, and may not use tools of excavation as defined above.  Deviation from the Court's orders or any representation made to the Court by Aqua Log in previous motions or filings may result in sanctions.  The Court hereby retains jurisdiction over this matter for the purposes of enforcing the Court's order.

      **SO ORDERED**, this  31st  day of March 2015.

      /s/ W. Louis Sands
      **W. LOUIS SANDS, SR. JUDGE**
      **UNITED STATES DISTRICT COURT**